IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GEORGE F. ELY,<br><br>　　　　Petitioner<br><br>　vs.<br><br>WARDEN DAVIS BALLARD;<br>ATTORNEY GENERAL OF THE STATE<br>OF PENNSYLVANIA,<br><br>　　　　Respondents | Civil Action No. 08-01<br>Magistrate Judge Amy Reynolds Hay |

## **MEMORANDUM OPINION**

HAY, Magistrate Judge

George Franklin Ely ("Petitioner"), a state convict,[1] pleaded guilty to an open charge of homicide, pursuant to a plea agreement. The terms of the plea agreement were that Petitioner would plead guilty to an open charge of homicide, and he would cooperate with the prosecuting authorities and testify against Petitioner's co-actors in the contract murder. In addition, Petitioner would appear before a Judge who would hold a degree of guilt hearing and determine the degree of murder for which Petitioner was guilty. The only promise made by the District Attorney of Washington County was that if Petitioner were to be found guilty of first degree, the District Attorney would not seek the death penalty.

Petitioner raises four issues in his habeas petition:

---

[1] It appears that Petitioner is currently incarcerated in West Virginia, for murder, serving a life sentence "with mercy," which apparently means with the possibility of parole. Although not clear, it appears that Petitioner will not commence his life sentence in Pennsylvania until he is released from the West Virginia sentence on parole.

> GROUND ONE: Miranda v. Arizona. [Petitioner alleged that his confession and statements were obtained in violation of Miranda.]

[Dkt. [1] at 5.]

> GROUND TWO: Motion to Withdraw Guilty Plea. [Petitioner alleged that he was actually innocent of the murder and only pleaded guilty because of, *inter alia*, allegedly false information told to him concerning evidence against him and he should have been permitted to withdraw his plea since he sought to do so prior to being sentenced.]

[Dkt. [1] at 18.]

> GROUND THREE: Ineffective Assistance of [trial/guilty plea] Counsel. [Petitioner contended that his trial counsel was ineffective for many reasons, including failures to investigate.]

[Dkt. [1] at 22.]

> GROUND FOUR: PROSECUTORIAL MISCONDUCT. [Petitioner alleged that the prosecutor illegally withheld discovery from Petitioner's trial counsel.]

[Dkt. [1] at 29.]

Petitioner has procedurally defaulted Grounds One, Three and Four because he never raised them in his direct appeal, and even if he had raised them in his PCRA petition, he never appealed the dismissal of his PCRA petition by the PCRA court. Ground Two is procedurally defaulted because it does not appear that he raised his desire to withdraw his guilty plea as a matter of federal constitutional law but merely as a state law issue under Pennsylvania Rules of Criminal Procedure. In the alternative, even if he had raised Ground Two as a federal constitutional issue, he fails to carry his burden to show that the state courts' adjudication of the claim was contrary to or an unreasonable application of United States Supreme Court precedent. Nor has he shown that the state courts' adjudication involved an unreasonable determination of

the facts in light of the evidence presented at his plea colloquy and his degree of guilt hearing.

**Factual and Procedural History**

Petitioner pleaded guilty on September 26, 1997. As a consequence of his agreement to cooperate in other prosecutions, including the prosecution of his co-actor, John Dino Martin, Petitioner's sentencing was delayed until September 11, 2003. The delay between his plea of guilt and his sentencing was a consequence of the fact that Mr. Martin, who had previously been convicted of first degree murder in West Virginia and of criminal RICO charges in Federal Court, had been placed in the Federal Witness Protection Program and made to serve his state and federal sentences in a Federal Bureau of Prisons facility under an assumed identity. Hence, at the time of the Washington County District Attorney's initiation of criminal proceedings against Mr. Martin, there were great difficulties in locating Mr. Martin and in bringing him to Washington County for Court appearances, given his status in the Federal Witness Protection program. The Washington County charges against Mr. Martin were eventually resolved in a plea agreement, wherein Mr. Martin agreed to plead guilty to criminal conspiracy to commit homicide for his role in the contract killing and he was sentenced to 5-10 years imprisonment, the sentence to run concurrent to the sentences that Mr. Martin was already serving. Mr. Martin's case concluded on July 29, 2003, the date whereon he was sentenced by the Washington County Common Pleas Court.

Mr. Martin received a significantly better plea bargain than had Petitioner because the whole case against Mr. Martin was based upon the testimony of Petitioner, whereas the case against Petitioner was much stronger. Moreover, there was significant potential for impeachment of Petitioner's testimony against Mr. Martin, including the fact that during a botched robbery that

3

Petitioner and Martin were involved in, where the victim shot and seriously injured Petitioner, Martin attempted to "finish off" Petitioner by firing his gun at Petitioner but Martin's gun jammed.

With the Martin prosecution concluded, the Washington County Court of Common Pleas scheduled a degree of guilt hearing for Petitioner to be held on September 10, 2003. On August 28, 2003, Petitioner filed a motion to withdraw his guilty plea and to dismiss the charges due to an alleged violation of a Pennsylvania State Rule of Criminal Procedure.[2] The Washington County Court of Common Pleas then ordered that the degree of guilt hearing scheduled for September 10, 2003 would be utilized to also hold a hearing on the two motions filed by Petitioner.

The Court denied both motions in open court, Dkt. [14-3] at 26 to 28; 40 to 44, finding no violation of the state rule of criminal procedure and finding that Petitioner's guilty plea was knowingly and voluntarily entered. See also Dkt. [15-2] at 20 to 33 (trial court opinion in support of denying the motions). The hearing continued and the Court held the degree of guilt hearing and found Petitioner guilty of first degree murder and sentenced Petitioner to life in prison, the only sentence possible, given that the District Attorney had promised not to seek the death penalty.

Petitioner appealed to the Superior Court from the Trial Court's decision. In that appeal,

---

[2] Namely, the Rule of Criminal Procedure was Pa.R.Crim.P. 1405, which at the time of Petitioner's plea, i.e., September 1997, was the governing rule and required that a criminal convict be sentenced within 60 days of the entry of the plea of guilty. See Dkt. [15-2] at 27 to 28. Petitioner's Defense attorney had cited to Pa.R.Crim.P. 704, in the Washington County Court of Common Pleas and in the appeal to the Superior Court, which apparently was the successor rule to Rule 1405 and was in effect apparently at the time the Defense Attorney made the motions to withdraw and to dismiss the charges. See Dkt. [15-2] at 27 to 28.

4

Petitioner raised only the following two issues.

> I. SHOULD APPELLANT['S] REQUEST TO WITHDRAW HIS GUILTY PLEA PRIOR TO SENTENCING HAVE BEEN GRANTED?
> II. WAS RULE 704 OF THE PENNSYLVANIA RULES OF CRIMINAL PROCEDURE VIOLATED AND WAS THE APPELLANT PREJUDICED BY SUCH A VIOLATION

Dkt. [15-2] at 6. The Superior Court affirmed. Dkt. [15] at 49-53.

Petitioner through counsel then filed a Petition for Allowance of Appeal ("PAA") in the Pennsylvania Supreme Court wherein he raised the same issues as follows:

> I. WHETHER THE PETITIONER'S MOTION TO WITHDRAW HIS GUILTY PLEA PRIOR TO SENTENCING SHOULD HAVE BEEN GRANTED, WHERE THE PETITIONER TESTIFIES THAT HE IS INNOCENT AND THE COMMONWEALTH PRESENTS NO EVIDENCE IT WOULD BE SUBSTANTIALLY PREJUDICED BY GRANTING THE MOTION TO WITHDRAW HIS GUILTY PLEA?
>
> II. WHETHER THE PETITIONER'S MOTION TO DISMISS THE CHARGES FOR VIOLATING RULE 704 OF THE PENNSYLVANIA RULES OF CRIMINAL PROCEDURE SHOULD HAVE BEEN GRANTED, WHERE APPROXIMATELY SIX YEARS ELAPSE[D] BETWEEN GUILTY PLEA AND SENTENCING AND THE PETITIONER IS SUBSTANTIALLY PREJUDICED BY THE DELAY.

Dkt. [15-3] at 7. The Pennsylvania Supreme Court denied the PAA on March 8, 2006. Dkt. [14-2] at 1.

On or about June 30, 2006, Petitioner filed a pro se PCRA petition. On July 17, 2006, counsel was appointed to represent Petitioner. On October 12, 2006, the Court ordered that an amended PCRA petition be filed by counsel, and an amended PCRA petition was filed as of November 27, 2006. It does not appear that the Respondents included a copy of the amended PCRA petition in the reproduced record to this Court. In any event, no matter what issues were raised therein, on July 17, 2007, the PCRA court dismissed the amended PCRA petition without

a hearing. Dkt. [14-7] at 25. Thereafter, Petitioner did not take an appeal.

On January 2, 2008, the Petitioner filed the instant habeas petition. The Respondents filed an answer, in which they raised the defense of procedural default and also addressed the merits. Dkt. [4]. Due to deficiencies in the answer, the Court ordered Respondents to file an amended answer, redressing those deficiencies. Dkt. [5]. Petitioner filed a traverse to the original answer. Dkt. [7]. After numerous attempts to properly file the answer, the operative answer is Dkt. [14] as supplemented by Dkt. [15]. The operative answer did not raise any issues not raised in the original answer and so Petitioner's traverse, filed in response to the original answer, maintains its validity.

**AEDPA is applicable**

The Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, tit. I, §101 (1996) (AEDPA), which amended the standards for reviewing state court judgments in federal habeas petitions filed under 28 U.S.C. § 2254, was effective April 24, 1996. Because petitioner's habeas petition was filed in the year 2008, AEDPA is applicable to this case. Werts v. Vaughn, 228 F.3d 178, 195 (3d Cir. 2000).

Where the state courts have reviewed a federal issue presented to them and disposed of the issue on the merits, and that issue is also raised in a federal habeas petition, AEDPA provides the applicable deferential standards by which the federal habeas court is to review the state courts' disposition of that issue. See 28 U.S.C.§ 2254(d) and (e).

In Williams v. Taylor, 529 U.S. 362 (2000), the Supreme Court has expounded upon the standard found in 28 U.S.C. § 2254(d). In Williams, the Court explained that Congress intended that habeas relief for errors of law may only be granted in two situations: (1) where the state

court decision was "contrary to . . . clearly established Federal law as determined by the Supreme Court of the United States" or (2) where that state court decision "involved an unreasonable application of[] clearly established Federal law as determined by the Supreme Court of the United States." Id. at 404-05 (emphasis deleted). The Court explained the two situations in the following terms:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Williams, 529 U.S. at 412-13. The Court of Appeals for the Third Circuit has also elucidated the "contrary to" clause by noting that "it is not sufficient for the petitioner to show merely that his interpretation of Supreme Court precedent is more plausible than the state court's; rather, the petitioner must demonstrate that Supreme Court precedent requires the contrary outcome." Werts v. Vaughn, 228 F.3d at 197 (quoting Matteo v. Superintendent, SCI-Albion, 171 F.3d 877, 888 (3d Cir. 1999)(en banc)). Moreover, it is Petitioner's burden to prove the state court decision is either contrary to or an unreasonable application of clearly established federal law. See Matteo, 171 F.3d at 888; Werts v. Vaughn, 228 F.3d at 197.

AEDPA also permits federal habeas relief where the state court's adjudication of the claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. 2254(d)(2).

**Discussion**

The Respondents first point out that Petitioner's claims have all been procedurally

defaulted because he never presented the issues to the state courts in one complete round of state court appeals. This court agrees but only to a certain extent. Respondents seem to contend that Petitioner presented none of his issues for one complete round of state court review. However, this is true for all of his issues but one, namely, he did present his issue of the propriety of withdrawal of his guilty plea to one full round of state court review, namely in his direct appeal as is demonstrated by the above recitation of the procedural history of this case.

However, the Respondents are nevertheless correct that to the extent Petitioner seeks to present the issue of the withdrawal of his guilty plea as being one of federal constitutional dimension, he has procedurally defaulted that federal constitutional issue because he only presented the issue of the withdrawal of his guilty plea as one of state law and not federal law in the state courts. See, e.g., Dkt. [15-2] at 9 to 14 (casting his argument in terms of Pa.R.Crim.P. 591(A), which permits that withdrawal of a guilty plea any time before sentencing in the exercise of the trial court's discretion).

In order to properly exhaust, and consequently, in order to avoid procedurally defaulting a federal claim, a state prisoner must have first "fairly presented" in the state courts all of his federal constitutional claims that he raises in his federal habeas petition.[3] For claims to be "fairly presented" in state court, claims raised in state court must be "substantially equivalent to those raised in federal court." Doctor v. Walters, 96 F.3d 675, 678 (3d Cir. 1996). Furthermore, not

---

[3] See Nelson v. Washington, 51 F.3d 276 (Table), 1995 WL 156624, at *3 (7th Cir. 1995)("the fair presentment of federal issues discussed under exhaustion is also a useful approach for determining if procedural default has occurred."); United States ex rel. Sullivan v. Fairman, 731 F.2d 450, 453 n.4 (7th Cir. 1984)("Although a number of the cases cited in this opinion, including Picard v. Connor[, 404 U.S. 270 (1971)] and Anderson v. Harless[, 459 U.S. 4 (1982)], are exhaustion cases, the analysis dealing with whether a state court has been fairly apprised of potential constitutional ramifications of a claimed trial court error is equally applicable to waiver [i.e., procedural default] cases.").

only must the legal theory presented to the state courts and the federal habeas courts be the same but the facts presented to the state courts underlying those legal theories must be the same facts presented to the federal habeas court. See, e.g., Gibson v. Scheidemantel, 805 F.2d 135, 138 (3d Cir. 1986)("Both the legal theory and the facts on which a federal claim rests must have been presented to the state courts."); Mattis v. Vaughn, 128 F.Supp.2d 249, 256-57 (E.D. Pa. 2001) ("The petitioner must fairly present to the state courts all the claims made in his habeas corpus petition. To satisfy the 'fair presentation' requirement, the state court pleadings must demonstrate that the legal theory and supporting facts asserted in the federal habeas petition are 'substantially equivalent' to those presented to the state courts") (citations omitted). A claim is "fairly presented" when there is: (a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation. McCandless v. Vaughn, 172 F.3d 255, 261 (3d Cir. 1999).

The court finds that Petitioner completely failed to present his grounds for leave to withdraw his guilty plea as a federal constitutional issue versus a state law issue of being permitted to withdraw his plea prior to sentencing in the sound exercise of the trial court's discretion, in essence, arguing that the trial court abused its discretion for not granting the withdrawal of the guilty plea. See, e.g., Duncan v. Henry, 513 U.S. 364, 365-66 (1995) ("If state courts are to be given the opportunity to correct alleged violations of prisoners' federal rights, they must surely be alerted to the fact that the prisoners are asserting claims under the United States Constitution. If a habeas petitioner wishes to claim that an evidentiary ruling at a state

9

court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal court, but in state court."). Cf. Wilson v. Briley, 243 F.3d 325, 328 (7th Cir. 2001) ("[A]buse-of-discretion arguments are ubiquitous, and most often they have little or nothing to do with constitutional safeguards."). The court finds that Petitioner has not satisfied any of the methods set forth above in McCandless v. Vaughn, 172 F.3d 255, 261 (3d Cir. 1999) in order to be deemed to have fairly presented this withdrawal of plea issue to the state courts as one raising a federal constitutional claim.

However, even if he had and even if we assume for the sake of argument that Petitioner had presented the issue of the withdrawal as a matter of federal constitutional law, Petitioner has not carried his burden to show that the state courts' adjudication of the claim was contrary to or an unreasonable application of then extant United States Supreme Court precedent.

Petitioner alleged in his motion to withdraw that he was innocent of the crime, notwithstanding his earlier guilty plea and extensive guilty plea colloquy that recited all of the substantial evidence against him.

The Trial Court rejected Petitioner's attempt to withdraw his plea on the following grounds:

> The Commonwealth's evidence against the defendant as presented at the degree-of-guilt hearing was overwhelming and included:
> The defendant's oral and written confession to the crime;
> The testimony of Jodi Wright who heard the shot that killed Dickinson at approximately 10:00 p.m. on March 11, 1985, and immediately saw the defendant leaving the scene and driving an automobile found to have been registered and owned by the defendant. (Degree-of-Guilt Transcript of September 11, 2003, pp. 71-79.);
> The testimony of Stephanie Kirkpatrick, girlfriend of Defendant Ely. On March 11, 1985, the date of the homicide, she was living with the defendant in Stubenville, Ohio. Several days before the homicide she went with the defendant

to purchase a night scope for a rifle he kept at their home. The evening of March 11, 1985, at approximately 5:30 p.m., he took the rifle with its scope attached and told her he was going to Washington, Pennsylvania, to do a job with John Martin. Before midnight the defendant returned home and said "they had completed the job." The next day the defendant was "flipping" the stations on television with the news about "a man who got shot with a high-powered rifle in the parking lot." The defendant told her he was the driver and John was the trigger man. Within days of this homicide she observed the defendant and Martin in the bedroom of her house with money on the bed. The defendant made her leave and shut the bedroom door. After that time, the defendant had a lot of money, buying a car, motorcycles and clothes. (Degree-of-Guilt Transcript, Sept. 10 and 11, 2003, pp. 51-60.)

Dkt. [15-2] at 28 to 29. Notably, the Superior Court affirmed the Trial court's denial of the motion to withdraw and, in the course of the opinion, found that

> On September 26, 1997, Ely entered an open general plea to criminal homicide and criminal conspiracy to commit homicide for his participation in a 1985 contract killing. In exchange for his full cooperation concerning his and other conspirators' involvement, the Commonwealth agreed no to seek the death penalty. The court conducted a full and extensive oral colloquy, after which the court found a factual basis for the plea and that Ely knowingly, intelligently, and voluntarily entered said plea.. . .
> . . . A timely post sentence motion was filed and denied, resulting in this appeal.
> A review of the record indicates that the lower court correctly denied both motions [i.e., the motion to withdraw the guilty plea and the motion to dismiss the charges for violation of State Rule of Criminal Procedure 704]. Although a pre-sentence request to withdraw a guilty plea should be liberally allowed, "the test to be applied by the trial courts is fairness and justice." **Commonwealth v. Forbes**, 299 A.2d 268, 271 (Pa. 1973). In **Forbes**, the court permitted the pre-sentence withdrawal of a sixteen-year-old defendant's guilty plea. The court emphasized that it was fair and just because the defendant withdrew his plea early in the proceedings and only abandoned the request in response to his attorney's threat to drop the case. *Id*. at 188-89.
> In this case, Ely did not make any requests for sentencing or plea withdrawal until nearly six years after his plea hearing. Ely first filed a motion to withdraw this guilty plea thirteen days before the degree of guilt hearing, claiming he was innocent and had repeatedly lied as a result of duress at his plea hearing in 1997. No evidence corroborates this alleged duress. To the contrary, the 73-page oral colloquy confirms Ely knowingly and voluntarily admitted his guilt. The testimony of Ely's then-girlfriend, an eyewitness, the coroner, and the

> investigating officer all point to the accuracy of Ely's original confession and statements against his co-conspirator. The collection of evidence against Ely presented at his degree of guilt hearing satisfied the elements of his first-degree murder. Since Ely has failed to satisfy the "fair and just" standard, there is no need to reach the issue of whether the Commonwealth has been prejudiced in its reliance on the plea. ***See Forbes, supra; Commonwealth v. Anthony***, 475 a.2d 1303, 1309 n. 6 (Pa. 1984).

Dkt. [15-3] at 13 to 15.

Petitioner has not demonstrated that the foregoing is contrary to or an unreasonable application of then extant Supreme Court precedent, as is his burden. Nor does this Court find the foregoing to be such. Neither has Petitioner carried his burden to show that the foregoing constituted an unreasonable determination of the facts in light of the record evidence. Stenson v. Lambert, 504 F.3d 873, 883 (9th Cir. 2007)("But Stenson's burden under 28 U.S.C. § 2254(d)(2) is to demonstrate that the Washington court's finding that his request was equivocal 'was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.'").

Lastly, even if we were to review this issue de novo, we would find that the Petitioner's plea was knowing and voluntary and that there was no federal constitutional basis for permitting him to withdraw that plea given that his sole argument concerning his alleged innocence is simply not borne out by the record.

Accordingly, this issue does not afford Petitioner any relief.

The remaining issues presented in the habeas petition have all been procedurally defaulted because they were waived under state procedural laws that were and are both adequate and independent.

While petitioner may have raised Ground One, namely, that his confession and statements

were obtained in violation of Miranda, in his pre-trial suppression motion, after he pleaded guilty, he did not take an appeal at that time nor did he ever again raise this issue in his direct appeal. Accordingly, it was waived under state law. See Pa. R.A.P. No. 2116(a) (issue must be presented in the Statement of Questions section of brief to be considered); Sistrunk v. Vaughn, 96 F.3d 666, 671 n.4 (3d Cir. 1996)("the rules [of Pennsylvania's appellate procedure] dictate that an issue raised at the trial level but not preserved on appeal will not be considered by any subsequent appellate court."); Thomas v. Elash, 781 A.2d 170, 176-77(Pa. Super. 2001) ("Although Appellant may have preserved the issues raised in his post trial motions by mailing the motions within 10 days of the verdict, he has now waived those issues by failing to include them in his brief to this Court. . . . Having failed to properly raise and address the issues in his brief, Appellant has precluded our review of his substantive claims.").

We find such a waiver under state law to have constituted a procedural default under federal habeas law. See, e.g., Pelzer v. Vaughn, No. Civ.A. 92-0091, 1992 WL 95915, at *5 (E.D. Pa. April 16, 1992) ("If an issue has once been raised [in the state court of first instance], but was not pursued to the higher courts, it is deemed waived, and further litigation on that issue will not be heard [in a federal habeas court] unless a petitioner can demonstrate cause and actual prejudice, or show that failure to consider the claims would result in a fundamental miscarriage of justice."); Terry v. Gillis, 93 F.Supp.2d 603, 611 (E.D. Pa. 2000)("Thus, because plaintiff failed to present both his claim regarding the jury charge and his claim that counsel was ineffective for not objecting to that charge to the Pennsylvania Superior Court and the Pennsylvania Supreme Court, his claims are procedurally defaulted"); Diventura v. Stepniak, No.

95-CV-0443, 1996 WL 107852, at *3 (E.D. Pa. March 11, 1996).[4]  Hence, Petitioner's waiver under state law constitutes a procedural default for purposes of seeking federal habeas relief.[5]

Petitioner cannot now show cause and prejudice for this specific procedural default of the Miranda claim because the only claim he could have is that his counsel at pre-guilty plea stage and on direct appeal to the Superior Courts was ineffective for failing to raise this issue regarding the alleged Miranda violation. We cannot independently confirm that[6] the Petitioner ever raised, in the amended PCRA petition, this claim that his trial counsel and direct appeal counsel (who were the very same attorney) was ineffective for failing to raise the Miranda issue on appeal.

---

[4] Nor do we find Pennsylvania's waiver rule inadequate due to Pennsylvania's formerly applied "relaxed waiver" rule, which was a rule applied only in capital cases, i.e., cases where the defendant/appellant was sentenced to death. See, e.g., Commonwealth v. Natividad, 773 A.2d 167, 178 (Pa. 2001)("under our doctrine of relaxed waiver, **applicable only** in direct appeals of capital cases . . .")(emphasis added), *abrogated by*, Commonwealth v. Freeman, 827 A.2d 385 (Pa. 2003)(holding that relaxed waiver will no longer be applied even to capital cases on direct review, as opposed to post conviction collateral review). Moreover, the Pennsylvania Supreme Court announced as early as November 23, 1998, that the relaxed waiver rule would not apply to capital proceedings in post conviction collateral review. Commonwealth v. Albrecht, 720 A.2d 693 (Pa. 1998). Hence, any relaxed waiver rule, which was applicable only to capital cases, does not render Pennsylvania's waiver rule in non-capital cases, such as this one, inadequate for purposes of the procedural default doctrine. See, e.g., Peterson v. Brennan, No. Civ.A. 97-3477, 2004 WL 1505253, at *7 (E.D. Pa. June 15, 2004)("While the Court is aware of the Pennsylvania courts' past practice of relaxing state procedural rules in death penalty cases, referred to as the 'relaxed waiver rule,' . . . petitioner does not cite any cases in which the relaxed waiver rule was applied in a noncapital case").

[5] Petitioner urges this Court not to decide whether he procedurally defaulted Ground One but to stay and abey this petition so as to permit him to go back to state court and attempt to file a second PCRA petition seeking to raise this issue. Dkt. [7] at 3. Because State law, in the form of the PCRA statute of limitations, clearly forecloses any potential that his attempt would be timely filed in the state courts, such a suggestion is rejected as being futile.

[6] We cannot do so because we do not seem to have the amended PCRA petition in the reproduced record provided by the Respondents.  However, Petitioner represents in this court that he did present this issue in his PCRA petition. Dkt. [7] at 2. Even accepting this as true, the precise issue of trial and appellate counsel's ineffectiveness for failing to raise the Miranda issue was waived, under state law, for failing to file an appeal of the PCRA court's dismissal of the amended PCRA petition and, consequently, was procedurally defaulted under Federal law.

14

Even if it were raised in the PCRA trial level, because Petitioner never appealed from the PCRA court's dismissal of the PCRA petition, this precise claim of trial and direct appeal counsel's ineffectiveness was itself waived under the foregoing discussion of Pennsylvania's law of waiver, and hence, procedurally defaulted under federal habeas law and, therefore, cannot serve as "cause" to excuse the procedural default of the Miranda claim. See, e.g., Edwards v. Carpenter, 529 U.S. 446, 453 (2000) (holding that "an ineffective-assistance-of-counsel claim asserted as cause for the procedural default of another claim can itself be procedurally defaulted").

Petitioner does attempt to excuse this failure of his to appeal from the PCRA court's dismissal by pointing to the fact that his PCRA counsel allegedly abandoned Petitioner. Dkt. [7] at 2. He further argues that this alleged abandonment essentially rendered the state court remedy of appeal unavailable to him. Id. ("Thus, he [i.e., Petitioner] did not respond to the Commonwealth's notice and he did not take up a direct appeal of the PCRA dismissal by Senior Judge, John F. Bell . . . because his legal counsel abandoned him, and counsel did not consult with him which made him think the state court judicial system had failed him to the point that the process became absent and ineffective unto him individually.").

The Court is not convinced. Petitioner's argument is, at base, a claim that his PCRA counsel was ineffective for abandoning him and this can serve as "cause" to excuse his procedural default of his claims for failing to appeal from the PCRA court's dismissal of his petition. Petitioner is simply wrong. Moreover, it is not that the state courts were unavailable to him or his counsel, he and/or his counsel simply chose not to utilize them.

The hard and steadfast rule is that in order for counsel's ineffectiveness to serve as

"cause" so as to excuse a procedural default, the habeas petitioner must have had a federal constitutional right to counsel at the stage of the alleged ineffectiveness which is being invoked as "cause." See, e.g., Coleman v. Thompson, 501 U.S. 722, 757 (1991) ("Because [the petitioner] had no right to counsel to pursue his appeal in state habeas, any attorney error that led to the default of [his] claims in state court cannot constitute cause to excuse the default in federal habeas."); Werts v. Vaughn, 228 F.3d at 189 n.4; Hull v. Freeman, 991 F.2d 86, 91 (3d Cir. 1993) ("Under *Coleman*, ineffective assistance of post-conviction counsel cannot constitute 'cause' because the Sixth Amendment does not entitle a defendant to post-conviction counsel").[7]

Similarly, even if we assume Petitioner raised the remaining three grounds of his habeas petition in his PCRA petition, because he never appealed the PCRA court's dismissal of the PCRA petition, he has waived those issues under state law and committed a procedural default under federal law. He would have no "cause" for such a default because the only cause apparent is the alleged ineffectiveness of his PCRA counsel and, as demonstrated, because he has no federal constitutional right to counsel at the PCRA stage, he has no claim of cause.

Nor does it appear that Petitioner has even argued for the miscarriage of justice exception. Even if he had, such an argument simply could not be successful on the record before the Court.

Accordingly, none of the issues Petitioner raises herein can be addressed on the merits because they have all been procedurally defaulted. Having failed to show cause or prejudice or a

---

[7] Nor, on this record, could Petitioner make a colorable showing of a miscarriage of justice so as to have his procedural defaults overlooked. See, e.g., Werts v. Vaughn, 228 F.3d at 193 (explaining miscarriage of justice exception as essentially requiring a showing of actual innocence of the crime). See also Schlup v. Delo, 513 U.S. 298, 327 (1995); United States v. Sorrells, 145 F.3d 744, 749 n.3 (5th Cir. 1998). Having shown neither cause and prejudice nor a miscarriage of justice, the procedurally defaulted claims cannot afford Petitioner relief.

miscarriage of justice, the procedural defaults cannot be overlooked and the petition should be dismissed with prejudice because of the procedural defaults.

**Certificate of Appealability**

A certificate of appealability ("COA") should be issued only when a petitioner has made a substantial showing of a denial of a constitutional right. 28 U.S.C. § 2254(c)(2). There is a difficulty with this provision when the District Court does not decide the case on the merits but decides the case on a procedural ground without determining whether there has been a denial of a constitutional right. See, e.g., Slack v. McDaniel, 529 U.S. 473 (2000); Walker v. Government of The Virgin Islands, 230 F.3d 82, 89-90 (3d Cir. 2000). In Slack v. McDaniel, the Supreme Court held that "when the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Slack v. McDaniel, 529 U.S. at 478. Hence, the analysis as to whether a certificate of appealability should issue to review a procedural question, has "two components, one directed at the underlying constitutional claims and one directed at the district court's procedural holding." Id. at 484-85. The test is conjunctive and both prongs must be met. See Walker v. Government of the Virgin Islands, 230 F.3d at 90.

Applying this standard to the instant case, the court concludes that jurists of reason would not find it debatable whether dismissal of the petition for procedural default and/or, as to the withdrawal of plea issue, for not being meritorious was correct. Accordingly, a certificate of appealability should be denied.

An appropriate Order follows.

/s/ *Amy Reynolds Hay*
United States Magistrate Judge

Dated: 1 May, 2009

cc:  George F. Ely
     32834
     Mt. Olive Correction Center
     One Mountainside Way
     Mt. Olive, WV 25185

     All counsel of record by Notice of Electronic Filing

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GEORGE F. ELY, | ) | |
| | ) | |
| Petitioner | ) | |
| | ) | |
| vs. | ) | Civil Action No. 08-01 |
| | ) | Magistrate Judge Amy Reynolds Hay |
| WARDEN DAVIS BALLARD; | ) | |
| ATTORNEY GENERAL OF THE STATE | ) | |
| OF PENNSYLVANIA, | ) | |
| | ) | |
| Respondents | ) | |

# **ORDER**

AND NOW, this 1st day of May 2009, IT IS HEREBY ORDERED that the habeas petition (Doc. 1) is **DENIED**, as is a Certificate of Appealability, for the reasons set forth in the accompanying Opinion.

**Petitioner is advised that he has the right for thirty (30) days to file a notice of appeal from our order denying his petition, see 28 U.S.C. § 2253(a); Fed. R.App. P. 4(a)(1)(A), and that our denial of a certificate of appealability does not prevent him from doing so, as long as he also seeks a certificate of appealability from the court of appeals. See Federal Rule of Appellate Procedure 22(b)(1).**

                                                     /s/ *Amy Reynolds Hay*
                                                     United States Magistrate Judge

cc: George F. Ely
       32834
       Mt. Olive Correction Center
       One Mountainside Way
       Mt. Olive, WV 25185

       All counsel of record by Notice of Electronic Filing